## Commonwealth ex relat. M'Laughlin *against* The Judges of the District Court for the City and County of Philadelphia.

The Supreme Court will not grant relief to an attorney who has been stricken off the rolls of the District Court or Courts of Common Pleas, either by certiorari, appeal, mandamus, or any other form of proceeding.

The District Court is a court of record, and not an inferior court.

**THIS** was a motion for a rule to show cause why a *mandamus* should not issue to the District Court for the city and county of *Philadelphia*, to restore the relator, Daniel M'Laughlin, to be an attorney of that court, who had been struck from the rolls by an order of the court.

*M'Laughlin, in propria persona*, contended, that there being no other specific remedy to attain the ends of justice, the course is by *mandamus*. *Rex* v. *Windham*, (*Cowp.* 378); *Hurst* v. *The Mayor of Canterbury*, (1 *Sider.* 94); and this court is now, by the 10th section of the Act of 16th June 1836, expressly vested with power, besides the powers before possessed, to issue such writ to any other court or tribunal, where, in the discretion of the court, it is necessary to the advancement and due administration of justice. In England, it has been adjudged that a *mandamus* lies to restore one to an attorney's place in an inferior court, because his is an office concerning the public justice, and he is compellable to be an attorney for any man, and he has a freehold in his place. *Hurst's Case*, (1 *Sider.* 152); 1 *Lev.* 75; 1 *Keb.* 549; as in *Hurst's Case*, he was restored to an attorney's place of the Court of Canterbury, and in *Collins's Case*, he was restored to an attorney's place of the Liberty of St. Martin's Le Grand. So a *mandamus* was granted to the mayor of Reading for an attorney of the King's Bench, who had been prohibited to practise in an inferior court in Reading. 1 *Vent.* 11; 1 *Sider.* 410; 1 *Mod.* 23. It has likewise

[M'Laughlin v. The District Court.]

been decided, in New York, that a *mandamus* lies to a Court of Common Pleas to restore an attorney whom they had removed from office. *The People* v. *Justices of the Delaware C. Pleas,* 1) *Johns. Cas.* 181). The District Court of the City and County of Philadelphia is a Court of Common Pleas, and liable, in the same manner, to a *mandamus* to inquire whether they have not improperly removed an attorney from his office. It is, in respect to this court, an inferior court, and subject to its supervision and control. The cases that have occurred in Pennsylvania, on this subject, were before the Act of 1836, and one of them, which occurred in Fayette county, was under a special Act of Assembly. They are inapplicable, for the most part, now, as the Legislature intended by the Act of 1836 to remove all doubts about the power of the Supreme Court, and to make a general provision for these cases.

The opinion of the Court was delivered by

ROGERS, J.—It is ruled in *The Commonwealth ex relatione, Brackenridge* v. *The Judges of the Court of Common Pleas of Cumberland county,* (1 *Serg. & Rawle* 187), that the admission of an attorney of a Court of Common Pleas is a judicial, and not a ministerial act, and for that reason not the subject of a writ of *mandamus.* That case is an authority directly adverse to the present application; in principle there is no conceivable distinction between them. If the admission of an attorney to the bar be a judicial act, by parity of reasoning, his dismission must be judicial also. If we cannot, as is decided, give relief in the one case, it is as difficult to imagine from whence we derive a power to interfere in the other. If the first is judicial, the last cannot be ministerial. In the case cited, the authorities relied on in the argument here, were reviewed by the court, and for reasons which it is impossible to controvert, and needless to repeat, were declared inapplicable. The District Court is a court of record, and although a subordinate, cannot be considered as an inferior court in a judicial sense. It is an inferior court, only in the same manner and to the same extent as the Court of Common Pleas in England is inferior to the King's Bench, the King's Bench to the Exchequer, and all the courts in the kingdom to the House of Lords. And this may serve to illustrate the distinction; for no case has been cited where an attempt ever has been made to restore an attorney by *mandamus,* who has been stricken off the roll by order of either of those courts, although to an inferior court, to the Mayor of Reading, for example, (1 *Ven.* 11 ; 1 *Sid.* 410), such a writ has been issued. Courts of record and of general jurisdiction are vested with exclusive power to regulate the conduct of their own officers, and in this respect their decisions are put on the same footing with that numerous class of cases which is wisely confided to the legal discretion and judgment of the court having jurisdiction over the subject-matter. In the case of *Austin et al.,* (5 *Rawle* 191) it re-

v. — 35

quired the aid of an Act of Assembly to give this court jurisdiction, and this is a strong, if not a conclusive argument against the motion.   The relator was an attorney of the District Court, and as such had sworn that he would behave himself in his office of attorney within the court according to the best of his learning and ability, and with all good fidelity as well *to the court* as to the client.   And if he violates this obligation, he is liable to suspension, removal from office, or to such other penalties as have hitherto been allowed in such cases by the laws of the Commonwealth. Section 72, Act of 14th April 1834.   It is proper to remark, that the powers of the courts to punish the official misconduct of their officers, is expressly reserved in the Act of the 16th June 1836.   In *Austin and others*, (5 *Rawle* 191), it is held, that it is a breach of professional fidelity to attack the proceedings of the court for impure and improper purposes through the medium of the public press; for such an offence, the court may properly exercise the power given them to suspend or expel an attorney from his office. Indeed, without this power, and its occasional exercise, the courts themselves would be brought into public odium and contempt.   It was for this offence that the District Court thought it right to suspend the relator from functions which he had abused.   The 10th section of the Act of 16th June 1836 declares, that " Besides the powers hitherto possessed by the Supreme Court to issue writs of *mandamus,* the said court shall have power to issue such writs to any other court or tribunal constituted by the authority of the laws of this Commonwealth, in all cases where such interposition shall, in the discretion of the said court, be necessary to the advancement and due administration of justice."   This, it is said, enlarges the power of this court, and in one respect it certainly does, as it puts an end to the vexed question *whether* the Supreme Court in any case can issue a *mandamus* to a court of record of general jurisdiction, an authority doubted in the case of *The Commonwealth ex relatione, Brackenridge* v. *The Judges of the Court of Common Pleas of Cumberland county,* and in the subsequent case of *Morris* v. *Buckley,* (8 *Serg. & Rawle* 215).   To what extent this jurisdiction is enlarged by the late Act, will be the subject of future adjudication.   It may, however, be safely assumed, that if it should so happen that a subordinate court should refuse to execute an order or decree of the appellate court, they may be compelled to perform their duty by this process.   Further it is not necessary at this time to go, as we see nothing in the Act which gives the court a supervisory power over that class of decisions which is the subject-matter of the relator's case.   And we are confirmed in this impression by the 23d section of the same Act, in which (be it observed) the Legislature have been careful to preserve the control heretofore vested in the several courts over the conduct of their officers.   We see nothing in this case which calls for interference on the hypothesis that it is necessary to the

[M'Laughlin v. The District Court.]

advancement or due administration of justice. There has been (as is not denied) a regular hearing on notice in a case within the acknowledged jurisdiction of the court. We have not been favoured with a copy of the publication which we are given to understand was the cause of the relator's expulsion from the bar. But aside of this objection, which is one of form, it is a decisive answer to the application, that the District Court has exclusive jurisdiction of the case under their constitutional responsibility, and that this court has no authority to give relief to the relator in this or in any other form, whether it be *certiorari*, appeal, or by writ of *mandamus*.

Motion overruled.